[No. 9721.   Department One.   October 28, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. M. ROB STAPP, *Appellant*.[1]

CRIMINAL LAW—EVIDENCE — ACCOMPLICES — ABORTION.   A conviction of abortion may be had upon the uncorroborated testimony of accomplices who testified directly to the defendant's connection with the crime.

CRIMINAL LAW—EVIDENCE — ACCOMPLICES — CREDIBILITY.   Accomplices in the crime of abortion are not unworthy of belief, as a matter of law, from the fact that they made inconsistent statements as to their knowledge of the miscarriage, prompted by fear of prosecution.

CRIMINAL LAW—APPEAL—REVIEW.   A conviction of abortion need not be disturbed on appeal when supported by evidence of accomplices whose credibility was for the jury.

WITNESSES—COMPETENCY — PRIVILEGED COMMUNICATIONS — PHYSICIANS—STATUTES.   Rem. & Bal. Code, § 1214, providing that a regular physician shall not, without consent of his patient, be examined in a civil action as to any information acquired in attending such patient, does not prevent the cross-examination of a physician charged with abortion requiring him to state the nature of a certain operation performed by him upon a woman, where the identity of the patient was not disclosed.

CRIMINAL LAW—TRIAL—MISCONDUCT OF PROSECUTING ATTORNEY.   Upon a prosecution for abortion, it is not misconduct on the part of the prosecuting attorney, warranting a reversal, to ask the defendant on cross-examination whether a certain other operation for pelvic abscess performed by him was performed upon a pregnant woman, where the answer was excluded on objection, and no claim of prejudice was made at the time (MOUNT, J., dissenting).

APPEAL—STATEMENT OF FACTS—NEW TRIAL.   The denial of a new trial will not be reviewed on appeal where the affidavits on which the motion was made are not brought up by bill of exceptions or statement of facts.

CRIMINAL LAW—EVIDENCE—ACCOMPLICES—QUESTION FOR JURY—INSTRUCTIONS.   Where the evidence does not conclusively establish that witnesses were accomplices, the question is properly left to the jury; and precautionary instructions as to the credibility of accomplices are not erroneous from the fact that the word "accessory" was

[1]Reported in 118 Pac. 337.

u.ed instead of "accomplice;" and further general instructions as to the credibility of the witnesses need not again refer to the accomplices.

SAME—ACCOMPLICES—INSTRUCTIONS. Where corroboration of accomplices is not required, it is not necessary to instruct the jury defining corroborating testimony of accomplices.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered April 13, 1911, upon a trial and conviction of the crime of abortion.  Affirmed.

*E. E. Boner* and *T. B. Bruener*, for appellant.

*W. E. Campbell* and *A. Emerson Cross*, for respondent.

PARKER, J.—The defendant, a practicing physician, was convicted of the crime of abortion, in the superior court for Chehalis county, and sentenced to serve a term of nine months in the county jail.  He has appealed to this court.

It is first contended that the trial court erroneously denied appellant's motion for a directed verdict in his favor.  The grounds upon which this contention is rested are that there is no evidence showing appellant's connection with the crime charged, save the testimony of two witnesses who it is insisted were accomplices in the crime, and whose testimony the court should have held to be unworthy of belief as a matter of law.  We do not understand that it is seriously urged that the crime was not proven.  Indeed, it seems to us there is but little room for such contention, there being abundant uncontradicted evidence of that fact independent of that of these witnesses.  Their testimony is direct and certain as to the acts of appellant, and clearly sufficient to warrant the jury in concluding that appellant produced the miscarriage, unless we can say that their testimony showing appellant's acts in that connection is untrue.  So we conclude that the credibility of these two witnesses is the only serious question presented upon the contentions of appellant touching the sufficiency of the evidence to sustain the conviction.

We are not at all satisfied that the evidence establishes the fact that they were accomplices in the crime, with such degree of certainty as to enable us to say, as a matter of law, that they were such; but conceding that they were accomplices, their credibility is affected only by that fact, together with the fact that they denied knowledge of the cause of the miscarriage and made some statements immediately thereafter inconsistent with their testimony. We assume that their testimony was not corroborated, in so far as it related to appellant's connection with the crime. We have heretofore recognized the rule that the testimony of accomplices, without corroboration, may be sufficient to support a conviction. *State v. Jones,* 53 Wash. 142, 101 Pac. 708; *State v. Ray,* 62 Wash. 582, 114 Pac. 439. So the want of corroboration alone is not sufficient to warrant our interference with the finding of guilt by the jury. The denial of the knowledge of the cause of the miscarriage by these witnesses, and their inconsistent statements, seem to have been prompted by fear of being accused of the crime. There is ground for the belief that they also made such statements for a like protection to appellant.

In support of the contention that the court should not allow this conviction to stand upon the testimony of these witnesses, counsel for appellant rely upon this court's holdings in *Edwards v. State,* 2 Wash. 291, 26 Pac. 258; *State v. Concannon,* 25 Wash. 327, 65 Pac. 534; *State v. Pearson,* 37 Wash. 405, 79 Pac. 985. A critical examination of those cases will show that there was much more reason for disbelieving the testimony of the witnesses there relied upon by the state than in this case. In the *Edwards* case the testimony was inherently improbable. In the *Concannon* case the witnesses were habitual users of opium, and more or less under its influence even during the trial. And in the *Pearson* case the witness was a confessed perjurer. We cannot hold that the jury and the trial judge, both having heard and seen these witnesses upon the stand, were bound to disbelieve them, and therefore we cannot interfere with the conviction upon

.the ground of insufficiency of evidence. We are led to this conclusion after a careful reading of all of the evidence, which we deem unnecessary to review in detail here.

Appellant was a witness in his own behalf. On direct examination he testified relative to his experience as a surgeon showing that he had a large and varied experience as such. This was evidently for the purpose of qualifying himself as an expert witness. He then gave testimony tending to show that the miscarriage could not have been brought about by his acts as claimed by the prosecution, assuming that the condition of the mother and the fetus were as shown by the state's evidence. He also gave testimony indicating his opinion that the operation was very unskillfully performed, based upon conditions as shown by the state's evidence. This was evidently for the purpose of creating the impression that it was not likely that a surgeon of his skill and experience would bring about a miscarriage in such an unskillful manner. On such examination, the prosecuting attorney questioned him to a considerable extent touching his experience as a surgeon, during which the following occurred:

"Q. Where did you perform your operations when you didn't perform them in your office? A. Usually at the sister's hospital. Q. When was the last time in the sister's hospital that you performed an operation? A. I think it was in August, either July or August. Q. Of this year? A. Of this year, yes sir, 1910. Q. Do you know what kind of an operation it was that you performed at that time? A. I don't remember exactly what it was. Q. Isn't it a fact doctor that you haven't been in the sister's hospital for over a year? A. No, sir, it is not a fact. Q. That is for any surgical work? A. I have been in there within a year for surgical work. Q. What did you do when you went there? A. I don't remember exactly what the operation was, I think it was an operation, am I required to tell what the operation was? Court: Yes, go ahead. A. I think it was an operation for an abscess, if I remember correctly. Q. An abscess where? A. A pelvic abscess, if I remember correctly. . . . Q. Was it a man or a woman? A. A lady. . . . Q. Was this woman that was in the hospital pregnant? Mr. Boner:

Object to the question as totally irrelevant and immaterial. Court: Sustained."

It is contended that the witness was thus compelled to testify concerning a particular operation, in violation of § 1214, Rem. & Bal. Code, providing that:

"A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient."

Assuming, for argument's sake, that this law applies equally to criminal actions, we are unable to see that it was violated. It is true that a particular operation was being inquired about, but there was nothing testified to by the witnesses which identified the patient with any degree of certainty at all. We think the information disclosed by the witness was not such as is sought to be suppressed by this law, in view of the fact that the identity of the patient was not disclosed, and it is not claimed that the testimony of the witnesses could lead to the identity of the patient.

It is also contended that the language of the last quoted question, in the light of what preceded, amounted to prejudicial misconduct on the part of the prosecuting attorney, in that it was an attempt to create the impression that the appellant had performed a criminal abortion by that operation. It will be noticed that this question was not answered, nor was there any attempt to press the matter farther upon the court's sustaining of the objection. No claim of prejudicial misconduct by the prosecuting attorney was then made, nor was there any request made to the court to instruct or caution the jury relative thereto. Assuming that the last question was legally objectionable, which may well be doubted in view of the previous testimony given by appellant, we do not think that the asking of it was such prejudicial conduct on the part of the prosecuting attorney as to call for a new trial. This is particularly true in view of failure of counsel for the appellant to make some claim of prejudice at the time.

One of appellant's grounds for new trial is newly discovered evidence. We find no affidavits or evidence in support of this ground in the statement of facts, and are therefore not called upon to notice it. There are, however, certain affidavits filed among the papers in the case, as shown by the clerk's transcript, purporting to support this ground for new trial, which counsel for both sides discuss as though they were properly before us. It is enough to say that we have read these affidavits and regard the facts therein stated as insufficient to call for a new trial.

It is contended that the trial court erroneously refused to instruct the jury that the two witnesses whose testimony the state relied upon to connect the appellant with the offense were accomplices, and to give the jury proper cautionary instructions relative to crediting such testimony. We have already stated our conclusion that we were not satisfied that the evidence established the fact that they were accomplices, with such degree of certainty as to enable us to say, as a matter of law, that they were such. Therefore, it, of course, was not error to leave that question to the jury, as the trial court did, giving cautionary instructions as to how the jury should regard the evidence of accomplices, as follows:

"In this state the distinction between accessories and principals has been abolished, and every person concerned in the commission of a crime or misdemeanor, and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a crime is a principal. And if you find from the evidence in this case that any one or more of the witnesses have so directly or indirectly counselled, encouraged, hired, commanded, induced, or otherwise procured or assisted to procure the commission of the crime charged, they and each of them are accessories and their testimony must be measured by the rules applicable to the testimony of accessories. And although such accessory may be called as a witness, and the credibility of such witness is one for the jury, such evidence, coming as it does from a polluted source, should be received with great care and caution, and be closely and doubtingly examined; and while

you may return a verdict of guilty upon such evidence, you should be satisfied beyond all reasonable doubt as to its truth."

The fact that the court used the word "accessory" instead of "accomplice" in this instruction, we think is immaterial; especially in view of the meaning given to the word in the instruction. The court further instructed the jury touching the credibility of witnesses as follows:

"The court instructs you that you are the sole judges of the facts in the case, and of the credibility of the witnesses, and in determining the credibility of such witnesses, or as to what weight you shall attach to the testimony of the various witnesses testifying in the case, you will take into consideration the demeanor of such witness on the witness stand; their apparent knowledge or lack of knowledge as to what they are testifying to; their candor or lack of candor, if any is shown; the interest which any witness may have in the outcome of the case, and if you find that any witness has willfully sworn falsely upon any material fact involved in the case, you are at liberty to disregard all of his testimony except such portion thereof as may be corroborated by other credible evidence in the case."

These instructions, it seems to us, are all that appellant was entitled to have given touching the question of the credibility of accomplices as witnesses.

It is further contended that the trial court erroneously declined to instruct the jury relative to corroborating testimony of accomplices, by defining such testimony and advising them of what it must consist. This, we think, was not error, because, as we have seen, corroboration as to appellant's connection with the crime was not necessary to a conviction in this case. And it may be conceded that there was no corroboration of the testimony of these two witnesses upon that question.

We find no error in the record. The judgment is affirmed.

DUNBAR, C. J., and FULLERTON, J., concur.

GOSE, J., concurs in the result.

Mount, J. (dissenting)—A part of the cross-examination of the defendant was a palpable effort to impress upon the jury that the defendant had produced other abortions, for the mere purpose of prejudicing the jury against him. This should not have been permitted. I therefore dissent.