[No. 16889.    Department Two.    April 27, 1922.]

THE STATE OF WASHINGTON, *Respondent,* v. H. Q. SIMPSON, *Appellant.*[1]

CRIMINAL LAW (84)—EVIDENCE—FACTS IN ISSUE—RELEVANCY. In a prosecution for robbery, upon a question as to whether accused had time to drive his accomplices to the scene of the crime by a certain route and wait for them a short distance away, it is proper to admit evidence of the time taken to drive another automobile over the same route.

WITNESSES (122)—IMPEACHMENT—INCONSISTENT STATEMENTS. An accomplice testifying that accused drove the perpetrators of a robbery over a certain route, may be impeached by his statement, made in the absence of the accused, that he drove over another route, as testified to by another witness.

[1]Reported in 206 Pac. 561.

CRIMINAL LAW (145)—EVIDENCE—MAPS. In a prosecution for robbery, it is not error to exclude a map or sketch, where it was immaterial and other testimony identified the only thing upon it.

SAME (296)—TRIAL—INSTRUCTIONS AS TO ACCOMPLICES. An instruction as to the responsibility of an accomplice who drove his associates to and from the scene of a robbery is favorable to the accused where it was to the effect that association with the others in the robbery would make him an accomplice, but that he would not be guilty unless he aided, counselled or assisted in its commission.

SAME (316)—TRIAL—INSTRUCTIONS. It is not error to refuse to give instructions in the language requested, if covered by instructions given.

SAME (441)—APPEAL—REVIEW—QUESTIONS OF FACT. A conviction supported by evidence will not be set aside for insufficient evidence, especially where it was largely a question of the credibility of witnesses and the jury went over, and viewed, the scene of the crime.

SAME (450, 451)—APPEAL—HARMLESS ERROR — EXAMINATION OF WITNESS. Prejudicial error cannot be predicated upon offering the wife of the accused as a witness, and stating that it had something to do with a revolver and not to any communication with accused, where the jury were excused during argument thereon, and the evidence was excluded.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered May 14, 1921, upon a trial and conviction of robbery. Affirmed.

*S. A. Bostwick,* for appellant.

*Thos. A. Stiger* and *Q. A. Kaune,* for respondent.

HOLCOMB, J.—Appellant, with others, was charged by information with the crime of robbery. The charging part of the information applying to appellant was:

"The said H. Q. Simpson . . . then and there being at the said felonious taking, stealing and carrying away of said money, . . . did then and there, and prior thereto did, wilfully, unlawfully and feloniously advise, encourage, counsel, aid and abet the said Oscar Lowe and Guy Troutman to commit said robbery."

He was tried, convicted and sentenced. Timely motion was made for a new trial and overruled.

A brief statement of the facts as shown at the trial is as follows: Shortly after noon, February 16, 1921, Troutman and Lowe entered the Rucker bank at Lake Stevens, a small village in Snohomish county, and by threats, force and violence to the cashier and one Vanderpool, a bank examiner, took, stole and carried away $1,440.55 of the bank's money. Lowe and appellant, Simpson, were arrested about two hours later as they and Troutman came out of the woods upon a public highway a few miles distant from the bank. When they were first arrested and for several days thereafter, they both claimed they were total strangers and that they had only casually met a few minutes before their arrest. Troutman was arrested several days later. Until the arrest of Troutman, Simpson insisted that he was not in Lake Stevens at the time of the robbery, and knew nothing about any bank robbery. It was shown that Simpson, Lowe and Troutman all lived in Tenino, Washington, were acquainted with each other, and that they, with one Williams, had left Tenino in a Ford car on the Monday morning prior to the robbery of the bank and drove to Everett, where they stayed all night. The next day they drove to Bellingham and stayed all night there. On the following day they left Bellingham, driving to Lake Stevens, which place they reached about noon, when Troutman and Lowe entered and robbed the bank. After the bank was robbed, all four of the men left the scene of the robbery in the Ford car, appellant Simpson driving the car. He drove the car at a furious rate of speed, over a devious route, and then had tire trouble, and finally had to abandon the car and take to the woods. Williams deserted the other

three a short distance from the place where the car had been stationed at the time of the robbery. Lowe, Troutman and appellant remained together until appellant and Lowe were arrested. Troutman was in sight at the time of the arrest of Lowe and appellant, but eluded the sheriff, and was not apprehended for four or five days, at which time he made a full confession of the whole matter. He testified as a witness for the state at the trial of appellant. Lowe and Troutman both pleaded guilty and were sentenced to the penitentiary. Lowe testified that Simpson knew nothing of the plan to rob the bank, while Troutman testified that they all four had conspired to rob the bank, and that the last minute plan was that Simpson's part was to stay with the car a short distance outside of Lake Stevens while Lowe and Troutman entered the bank and Williams stood guard in the street.

Errors are claimed by appellant as to the admission and rejection of evidence by the trial court, specifying the admission of the testimony of a witness named Denny, who testified that he drove an automobile, not quite 25 miles an hour, and that it took him three minutes to drive from the point where the monorail goes over the pavement around the dirt road north and back into the town of Lake Stevens; and in excluding the introduction of appellant's exhibit 2, being a map of the vicinity showing the location of the road, introduced by the state in the former trial and identified by Troutman; and in permitting the witness West to testify that Lowe, in the absence of appellant, acknowledged that appellant drove around the road and let Williams off at Lake Stevens.

The evidence of Denny was competent to show that it was possible to take the route testified to by Troutman and leave the men who robbed the bank and the one who stood guard in the street and return to the

place on the pavement at the monorail. The testimony of West was competent to show a contradictory statement and tend to discredit the testimony of Lowe, who testified in favor of appellant that they did not drive around the road and back into town and let Williams off, as testified to by Troutman. There was no error in rejecting the map or pencil sketch offered in evidence, since it did not appear to be material nor important, and the witness who testified as to the map identified only one thing upon it, and that was the location of the bank.

It is further claimed that the court erred in refusing to instruct as requested in two requests of appellant. The court did, however, instruct the jury as follows:

"You are instructed that the witnesses, Guy Troutman and Oscar Lowe, who have testified in this case, are accomplices, and an accomplice is one who is associated with others in the commission of crime, all being principals. Troutman has testified that he and Lowe were associated with the defendant, Simpson, in robbing the bank mentioned in the information, and that, in law, would make them accomplices."

The jury was further instructed:

"Even though you should find, beyond a reasonable doubt, that the defendant, Simpson, after the robbery was committed, assisted those who committed it in their escape, you cannot find the defendant guilty unless you should believe beyond a reasonable doubt that prior to or during the robbery, he aided, counseled or in some manner abetted or assisted in its commission."

These instructions were as favorable to appellant as could be desired, and appellant was not entitled to instructions given in the exact language requested by him. It is sufficient to give correct instructions upon any issue involved in a case in the language of the court.

It is contended that the court erred in not granting a new trial. There was ample testimony, if believed by the jury, to convict appellant. True, there was a conflict in the testimony and the jury was compelled to believe one side or the other of the conflicting testimony. While appellant contends that the testimony of the accomplice Troutman is unworthy of belief, the jury went over, and viewed, the scene of the robbery and the vicinity involved, and for that reason, as well as upon general well accepted reasons, were much better able to judge of the credibility of the two accomplices as witnesses than we are.

The last contention of appellant is that he was deprived of a fair trial by the attempted introduction of his wife as a witness, and by the prosecution stating what was intended to be proven by her. This is not assigned as error in the brief of appellant. However, there was nothing prejudicial occurring in respect to the matter. A woman named Viola Simpson was called as a witness by the prosecutor and sworn. Thereupon counsel for appellant stated that the witness was the wife of appellant, and objected to her testifying. The prosecutor did not examine, but said that it was intended to prove no kind of communications between her and appellant, but that it was only intended to prove something regarding a nickel-plated pistol. Thereupon the jury was excused, and while absent the witness was interrogated and the trial judge concluded that she could not testify over the objection of appellant, and she was excused. The jury was returned into court and the trial proceeded. From her evidence given to the court in the absence of the jury it is at least a question as to whether the woman was legally married to appellant, so that he was entitled to claim the privilege of the statute. However, it is manifest that there was nothing whatever prejudicial to appel-

lant occurring in the foregoing matter which could have prejudiced the jury.

We can find no error in the record, and the judgment must be affirmed.

Affirmed.

PARKER, C. J., FULLERTON, HOVEY, and MACKINTOSH, JJ., concur.