**STATE of Iowa, Appellee,**

v.

**Earl LIMERICK, Appellant.**

No. 53077.

Supreme Court of Iowa.

July 24, 1969.

Thomas L. Root, and Raymond E. Pogge, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and John P. Churchman, Special Prosecutor, for appellee.

BECKER, Justice.

Defendant, Earl Limerick, was charged by indictment with the crime of murder. He pled not guilty, was tried by jury, convicted of second degree murder and sentenced to 30 years in prison. He appeals alleging errors in admission of evidence, failure to instruct the jury regarding improper remarks of the prosecutor and insufficient evidence to justify submission of the charges of first and second degree murder. We consider the errors in reverse order and affirm.

From about 7:00 a. m. September 26, 1967, defendant Limerick and a friend, Marvin Stockton, were sitting in the kitchen of Limerick's home drinking whiskey. Later in the morning decedent, William Cullen, who lived upstairs in the same house, came in the back door. Limerick told Cullen he should knock before entering and should use the front door. Cullen repied that he had lived there seven or eight years and didn't have to knock. He sat down at the table near a butcher knife and had several drinks.

As the three men sat at the table Limerick and Cullen continued to argue about Cullen's use of the back door without knocking. Limerick thought Cullen had been drinking before he came into the kitchen. A short while later Limerick told Cullen to go upstairs to his room. Cullen started to rise out of the chair with his hand on the butcher knife and Limerick

shot him twice in the chest causing immediate death.

Defendant called the police. Part of Officer Anderson's testimony about his conversation with defendant included the following: " * * *, he (defendant) gave us two reasons for this happening. The first being that he had been attacked by the man lying on the floor with a butcher knife and he had shot him in self-defense. Then, seconds after he gave us this reason for the happening, he then stated that what happened was, Mr. Cullen, as the man was later identified, was outside of the back door wanting to come in. Mr. Limerick stated that that was not his door. His apartment was upstairs of the house. He was to go around to the front door to reach his apartment. Mr. Limerick stated that, at this time, Mr. Cullen then hollered, no he was going to come in the door. Upon Mr. Limerick's stated reply, 'If you do, I will shoot you.' Mr. Limerick then stated Mr. Cullen did enter the door and he did shoot him. * * *."

Defendant produced the gun immediately after the officers arrived. Officer Anderson took the gun to the police car and put it on the seat where it remained unguarded for some 45 minutes. When turned over to the police the gun had four spent and three live shells in the chambers. The eighth chamber was empty.

Defendant said he had the gun in his pocket because he had loaned money on the gun and the owner was coming over that morning to redeem it. Two of the spent shells were due to test firing the gun the day before. Defendant also testified Cullen had made threats on defendant's life two or three times before this incident. Defendant's evidence showed Cullen had been convicted of first degree murder, had served 38 years in the penitentiary at Fort Madison and was a heavy drinker, moody and argumentative. Defendant said he was disturbed and frightened when Cullen started to raise the butcher knife and shot in self-defense.

I. Defendant argues: "It is submitted that the State failed to show any deliberation and premeditation by the defendant to warrant the submission of murder in the first degree. Also, that the State failed to show that the defendant acted with malice aforethought, as required for the crime of murder in the second degree."

▆▆▆ Defendant does not raise failure to give the Miranda warnings as a ground for disregarding defendant's admissions made at the scene of the crime. We treat the officer's account of defendant's statements as admissible evidence. Limerick's statement that he warned Cullen not to come in the back door or he would shoot him, together with the circumstances of the shooting, supplied a sufficient basis for submission of deliberation and premeditation. The questions, (1) whether Limerick's first or second account of the fracas was correct, (2) permissible inferences arising from the use of a deadly weapon and (3) the effect of the argument between the two men, were for the trier of the facts.

In State v. Christie, 243 Iowa 1199, 1207, 53 N.W.2d 887, 54 N.W.2d 927, we quoted State v. Powell with approval: "We cannot hold under these facts that it was the duty of the trial court to withdraw the charge of either first or second-degree murder. The State's brief quotes from State v. Powell, 237 Iowa 1227, 1238, 24 N.W.2d 769, 775, the following language we deem applicable here:

" 'The other elements of premeditation and deliberation are likewise provable by the facts and circumstances surrounding the homicide. We have said premeditation and deliberation need not exist for any particular length of time. State v. Fuller, 125 Iowa 212, 100 N.W. 1114; State v. McPherson, 114 Iowa 492, 87 N.W. 421; State v. Woodmansee, 212 Iowa 596, 233 N.W. 725; State v. Baker, 143 Iowa 224, 229, 230, 121 N.W. 1028, 1030. In the last-cited case we said:

" ' "This court has never held that the trial judge could be required by motion to enter into a critical examination of the evidence, where the proof tended to show homicide by violence, with malice aforethought, for the purpose of determining whether in his opinion the act was deliberate and premeditated. There might perhaps be cases where the circumstances of the homicide were such as that the court could say, as a matter of law, that there was no evidence of deliberation and premeditation, but such cases would be exceptional. Where the defendant has selected a deadly weapon, and with opportunity to deliberate has intentionally used it in a deadly manner, it would not, we think, be proper for the court to take the question of deliberation and premeditation from the jury. That under such circumstances it is proper to submit the question of first degree to the jury, although there is no specific proof of deliberation and premeditation, apart from the proof of the violent infliction of a mortal wound, has been affirmed by this court on several occasions." ' " Basically defendant relied on self-defense and the jury found against him. The evidence of premeditation, present here, distinguishes this case from State v. Wilson, 234 Iowa 60, 93, 11 N.W.2d 737; State v. Leib, 198 Iowa 1315, 1321–1323, 201 N.W. 29; State v. Borwick, 193 Iowa 639, 643, 187 N.W. 460, where it was held error to instruct on the higher offenses.

▆▆▆ As to malice, the record clearly shows use of a deadly weapon and an argument of some duration between Limerick and Cullen. The issue of malice was also for the jury. State v. Christie, supra; State v. Baratta, 242 Iowa 1308, 49 N.W.2d 866.

▆▆▆ II. Defendant objects to the court's failure to instruct the jury as to improper remarks alleged to have been made by the county attorney in final summation. No court reporter's record of the arguments was made, and no bill of exceptions by the judge or by bystanders was filed. Sections 786.5, 786.6, Iowa Code, 1966. How-

ever, the State does not raise sufficiency of the record as a defense to the assignment and we consider the error on the record made. Cf. State v. LaMar, 260 Iowa 957, 966, 151 N.W.2d 496.

At trial seven character witnesses had been called by defendant to testify to his good character. The exception preserved by defense counsel was: "The prosecuting attorney stated that the character witnesses, namely, Mr. Katelman, Mr. Wickham, Mr. Durick, Mr. Paulson, Mr. Byers and Mr. McDaniels, did not hear the testimony of the defendant."

■ On motion for a new trial defense counsel argued: " * * *. When Mr. Churchman addressed the jury, he led the jury to believe that, had our character witnesses heard Mr. Limerick's testimony, they would not have believed him. We feel that is error and feel that the jury should have been instructed to disregard his remarks." The incident did not constitute prejudicial error. It is doubtful that counsel went beyond the bounds of legitimate argument. In any event the immediate admonition to the jury was sufficient to cure any error which might have occurred in this situation. Cf. State v. Wesson, 260 Iowa 331, 340, 149 N.W.2d 190; State v. LaMar, supra.

III. Finally, defendant assigns admission of the gun, exhibit 11, in evidence as reversible error. The exhibit was identified by Officer Anderson as the same gun that was handed to him by defendant at defendant's home the morning of the shooting. Anderson testified in some detail as to his examination of the gun that morning and stated it was in the same condition as when it was received from defendant. The witness stated he marked the weapon and turned it over to Lt. Bockert of the Identification Bureau. Officer Clark, also of the Identification Bureau, told of taking photographs of the gun and then sending it, along with the bullets, spent cartridges and slugs from the body to the Federal Bureau of Investigation. F.B.I. Agent Stack positively identified the slugs taken from deceased's body as having been fired from exhibit 11.

In State v. Drosos, 253 Iowa 1152, 1160, 114 N.W.2d 526, we quoted State v. Jones, 233 Iowa 843, 848, 849, 10 N.W.2d 526, 529: " 'The rule is that articles, including those found at the scene of the crime, which are properly identified and which tend to show the commission of the crime or the manner in which it was committed, or to elucidate some matter in issue, are admissible in evidence for inspection and observation by the jury. * * * There was no evidence at any time during the trial that there had been a change in condition or appearance of the articles identified and in the absence of any such testimony the identification was sufficiently complete to make it proper for them to be exhibited to and submitted to the jury.' "

■ In passing on the admissibility of exhibits where a break in the chain of custody is shown, we have ordinarily held the failure to account for undisturbed possession goes to the weight of the evidence rather than its admissibility. State v. Shilinsky, 248 Iowa 596, 599, 81 N.W.2d 444; State v. Ford, 259 Iowa 744, 748, 749, 145 N.W.2d 638. We have consistently applied this rule and held the evidence properly admitted as within the discretion of the trial court where the exhibits consisted of solid objects, not easily susceptible to undetected alteration, such as money, State v. Shilinsky, supra; hammer and gun, State v. Ford, supra; a gun, State v. Johnson, Iowa, 162 N.W.2d 453; clothing and a body, State v. Parker, Iowa, 151 N.W.2d 505, 508; matches and glasses, State v. Post, 255 Iowa 573, 123 N.W.2d 11. Where the possibility of alteration of an exhibit is slight, the materiality of the alteration remote, and the exhibit has otherwise been properly identified we have dispensed with a showing of continuous custody. See State v. Christie, supra: "The bullet was identified by the surgeon who removed it from decedent's head and by the identification expert who was present when it was

removed. We hardly see how proof as to its custody in the meantime could add to its identification." (loc. cit. 243 Iowa, page 1210, 53 N.W.2d, page 892.)

Defendant cites numerous cases where failure to show continuous custody of the article has rendered the exhibit inadmissible. These cases all involve liquids or other substances which are easily susceptible to undetected alteration. They also are often the basis for expert testimony. In such cases a break in the chain of custody, under the circumstances of the individual case, has been held fatal to admissibility. Cases involving intoxicating liquors are: State v. Kingsbury, 191 Iowa 743, 183 N.W. 325; Joyner v. Utterback, 196 Iowa 1040, 195 N.W. 594. Cases involving blood samples are: Lessenhop v. Norton, Iowa, 153 N.W.2d 107, 111; State v. Weltha, 228 Iowa 519, 292 N.W. 148. A case involving nitroglycerine is State v. Phillips, 118 Iowa 660, 92 N.W. 876; a case involving hairs on an axe which were used as a basis for expert testimony, State v. Hossack, 116 Iowa 194, 89 N.W. 1077. In such cases the rule requires a stronger showing of custody and nonprobability of alteration. A gun is not in this category.

█ The rule followed in this jurisdiction is found in second paragraph of 29 Am.Jur.2d Evidence, section 774, page 845: "The party offering the object or article in evidence must also show that, taking all the circumstances into account, including the ease or difficulty with which the particular object or article could have been altered, it was reasonably certain that there was no material alteration. It is not necessary that an object or article which is offered in evidence should be in precisely the same condition at the moment of its offer as at the time when it played a part in the occurrence which gave rise to its offer in evidence, but the change in its condition must not have been wrought for unjustifiable purposes, and it must not be of sufficient moment that the exhibit will mislead."

█ In this case the gun was positively identified by an expert witness as the weapon used to fire the fatal shot. No material alteration was shown. The exhibit was properly admitted.

Affirmed.

All Justices concur.