**STATE of Iowa, Appellee,**

v.

**Thomas Lee GRADY, Appellant.**

**No. 55161.**

Supreme Court of Iowa.

Oct. 18, 1972.

Rehearing Denied Nov. 9, 1972.

Lester C. Johnson, Clarion, for appellant.

Richard C. Turner, Atty. Gen., Robert D. Jacobson, Asst. Atty. Gen., and Louis Beisser, County Atty., Fort Dodge, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of illegal sale of narcotic drugs, to-wit: marijuana in violation of section 204.2, The Code, 1971. After defendant's plea of not guilty he was tried to a jury, convicted and sentenced and now appeals. We affirm.

Specifically, defendant was accused of having sold to one Jerry Johnson, an employee of the Department of Public Safety, Division of Narcotic Drug Enforcement, a quantity of a substance represented by defendant to be marijuana. It appears that in the month of April, 1971, Johnson, in connection with his duties as an enforcement agent, was working in Fort Dodge, and became acquainted with one David Orhtman, an admitted user of narcotic drugs, and a convicted felon. Orhtman was working as an informer and put Johnson in contact with defendant.

Orhtman and Johnson first contacted defendant at a dam on the Des Moines River near Fort Dodge on June 9, 1971, at which time an arrangement was made for Grady to sell to Johnson two pounds of marijuana for $200; delivery was to be made at Orhtman's home at six o'clock that same evening. Pursuant to such pre-arrangement, defendant Grady appeared at Ohrtman's residence and delivered to Johnson a brown paperbag containing two cellophane bags each of which were filled, or partially filled, with a substance represented by defendant to be marijuana, and the defendant was thereupon paid the sum of $200 by Johnson.

Immediately after the delivery of the package, Johnson removed a small sample from one of the bags and delivered it to an agent for conducting a field test for the purpose of determining whether the substance was in fact marijuana. The test performed indicated that the substance was not marijuana. Johnson thereupon performed the same field test with the same negative results.

After the performance of the field test, Johnson returned to Fort Dodge, located defendant and attempted to get his money back, claiming he had been sold some bad marijuana, but was told by Grady that the substance was different because it had come from Mississippi, and the defendant refused to refund the money to Johnson, and also refused to exchange the substance previously delivered by him for good marijuana. The package was at all times up to the happening of the above recited events

in the possession and under the control of Agent Johnson.

Later that same evening Johnson left the package in Orhtman's car, and it appears that it was on the floor of the front seat of the Orhtman automobile, but was then placed on the floor of the back seat behind the driver's seat. Orhtman picked up a passenger, one Rummel, who was seated in the passenger's side of the front seat of the automobile, and the record discloses that at no time while the substance was in the back seat of the Orhtman automobile did anyone occupy the back seat.

After affording a ride to Rummel, Orhtman drove to his own home and took the package out of the back seat, placed it in the trunk of his car and locked the trunk. The next day he removed the packages from the trunk and put them in the back seat of his car, and later the same day delivered the substance to Mr. Johnson, the agent. The package remained in Johnson's possession until it was delivered by him to the state chemist at Des Moines, who conducted exhaustive tests on the substance. His testing resulted in a determination that one of the two cellophane bags contained a substance which he identified as being entirely parsley leaves, but that the other cellophane bag contained two different types of material, some of which he identified as being marijuana. The packages remained under the control of the chemist, Mr. Chapman, until he carried it into the courtroom with him during the course of the trial of the defendant.

It appears therefore that the substance secured from defendant by Agent Johnson was at all times from and after it left defendant's possession in the possession or under the control of Agent Johnson, Orhtman, or the state chemist, Mr. Chapman. All of the witnesses in the chain of possession testified that the substance remained in the same condition as it was when obtained from the defendant, save and except for those samples which were used for the purpose of conducting tests.

In the first error upon which defendant relies for reversal, he contends trial court erred in receiving the exhibits allegedly containing marijuana into evidence, insisting that there was no showing of a complete chain of possession from the first witness to the final custodian; asserting further that the State was required to show that it was reasonably certain there had been no material alteration in the exhibit, the exhibit being a substance readily susceptible to alteration, and that the State failed to show the exhibits remained in the same condition during all of the period of time the substance was in the possession of the persons in the chain of possession.

I. We are unable to perceive merit in the contention of defendant that the court erred in receiving into evidence the exhibits allegedly containing marijuana. A continuous chain of possession was testified to from the time the exhibit was received from the defendant by Agent Johnson until it was produced by the chemist, Mr. Chapman, at defendant's trial. There was no break in the chain of custody of the exhibits as was true in the factual situations apparent in some of the cases cited by defendant. We recognize the rule as laid down in State v. Limerick, 169 N.W.2d 538, that there is an exception to the rule requiring an unbroken chain of custody in cases where exhibits consist of solid objects such as money, guns, tools and clothing. This rule has been reiterated in State v. Ubben (Iowa 1971), 186 N.W.2d 625, 627, and cases there cited.

Concededly, a substance such as the exhibit in the matter before us is readily susceptible to alteration, adulteration or change. However, where a chain of possession or custody is established as in the matter before us, the question is more as to the weight of the evidence rather than its admissibility. State v. Shilinsky, 248 Iowa 596, 599, 81 N.W.2d 444.

Defendant complains of the State's failure to call the witness Rummel, who was a passenger in Orhtman's automobile during

the time Orhtman had possession of the exhibits. We incline to the view expressed by this court in State v. Barton, 202 Iowa 530, 210 N.W. 551, that the possibility the exhibit was, or could have been, tampered with by Rummel is too remote to justify the exclusion of the exhibit from the consideration of the jury in this case. See also Critelli v. Tidrick, 244 Iowa 462, 56 N.W.2d 159.

We conclude therefore trial court did not err in admitting into evidence the exhibits allegedly containing marijuana.

■ II. In his second assigned error, defendant contends trial court erred in overruling defendant's motions on the ground that there was an insufficient quantity of marijuana in the substance admittedly sold by defendant to the narcotic agent to produce a narcotic effect, and that there was an insufficient quantity of marijuana in the exhibit to be used in the usual manner, that is, to be smoked. We find this contention also without merit.

Section 204.2, The Code, 1971, provides:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, purchase, prescribe, administer, dispense, compound, or propagate any narcotic drug, or any preparation containing a narcotic drug, except as authorized in this chapter."

Concededly, there was a minuscule amount of marijuana detected by the state chemist in the substance sold by defendant to the narcotic agent; however, the substance sold did contain some marijuana.

■ This question has really been settled by this court in the recent case of State v. McReynolds (Iowa 1972), 195 N.W.2d 102, 104–105. Our statute, section 204.1(10), The Code, 1971, defines marijuana, but makes no distinction as to the quantitative amount of marijuana in any gross substance containing the same.

In State v. McReynolds, *supra*, this court said, at page 105 of the cited authority:

"Section 204.1(10(c) does not differentiate strong marijuana from weak marijuana."

Our statute is, therefore, qualitative rather than quantitative, and renders defendant's contention in this regard untenable. We find no error in this case, and affirm the trial court.

Affirmed.