**STATE of Iowa, Appellee,**

v.

**John Frank LUNSFORD, Appellant.**

**No. 55542.**

Supreme Court of Iowa.

Feb. 21, 1973.

Fehseke & Fehseke, Fort Madison, for appellant.

Richard C. Turner, Atty. Gen., Raymond M. Sullins, Asst. Atty. Gen., and Michael M. Phelan, Asst. County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant was convicted by jury and sentenced for sale of a narcotic drug (marijuana) under § 204.2, The Code, 1966.

His appeal presents three questions: (1) Did trial court err in admitting evidence as to details of an experiment? (2) Did trial court err in admitting the alleged marijuana into evidence over an objection that the State had not demonstrated a proper chain of custody? (3) Was defendant deprived of a fair trial because tried by members of a jury panel which had been told of his former plea of guilty in the case? We answer "no" to the first two questions, "yes" to the third, and reverse and remand for new trial.

We will summarize the evidence in its light most favorable to sustaining the verdict.

In the evening of May 8, 1969, detective Jay Edward Holley of the Burlington police department came to Fort Madison to assist with a narcotics "buy." He met officer Gary Frost of the Fort Madison police department and one Junior Jones, an informant. Jones was to set up a marijuana purchase from one Clifford Polton. Polton had asked Jones to help him sell ten pounds of marijuana, and Jones had told the police. Polton was employed with defendant and they were friends. Defendant had engaged Polton to help him sell the ten pounds of marijuana. Neither Jones nor the police knew Polton was acting for defendant.

During the course of the evening Jones and Holley met Polton. Holley expressed interest in buying marijuana. They drove around in Jones' car while discussing the subject, and later Polton took them into an alley behind his residence. He left the car and returned with a small sack of marijuana. Polton said he did not have the quantity Holley wanted. They drove around together again in Jones' car.

Then they returned to Polton's residence. Polton went inside for a few minutes, telephoned defendant, and when he returned said he had arranged for Holley to buy the marijuana he wanted and would take them to the place. They "zigzagged" through the downtown Fort Madison area and ulti-

mately ended up at about 1:00 a. m. on May 9, 1969, in front of a house on a dead-end section of Second Street called Prison Hollow.

Defendant came out of the house and Holley was introduced to him by Polton as the man interested in purchasing marijuana. Polton told defendant Holley had checked the "sample." Then defendant walked over to a car parked in the yard, opened the door and showed Holley a red, cut-off cardboard box containing what he said, and Holley believed, was marijuana. He viewed it under the car's dome light. The marijuana was in 14 individual plastic bags in a "One-Hour Martinizing" plastic garment bag which also contained loose marijuana.

Defendant said he wanted $1000 for the marijuana. Holley had only $420 with him and therefore offered to buy half of it. They finally agreed Holley could have the whole box for $420 with $600 to be paid later. Holley paid defendant the $420. Jones took the box to his car. Defendant and Polton started for the house. Jones activated the turn signals on his car as a prearranged signal to other officers. Holley placed defendant and Polton under arrest. He held them at gunpoint and told them to stand against the garage door with their hands up. Polton complied but defendant was restless and argumentative.

Holley's problem was intensified by the fact the other officers thought the purchase would be made elsewhere and had lost track of him. Holley became worried and directed Jones to call the police from a neighbor's phone. Jones was not able to get use of a phone so Holley then told him to take the car and go to the police station for help. Jones met Sergeant Hayes as he drove into the police station drive. Hayes got in Jones' car and after hearing his story told him to drive as rapidly as was safe back to the scene of arrest. Jones was gone a total of three or four minutes. Frost was notified by radio and also went to the scene. The officers assisted Holley.

The box and contents were taken from Jones' car. Later chemical analysis showed the contents to be slightly more than ten pounds of very good quality marijuana.

I. *The experiment.* Defendant alleges it was error to permit officer Paul Bartholomew to testify that the driving distance between the police station and arrest scene was eight-tenths of one mile and that it took him approximately two minutes to travel it at 25 miles per hour. He measured and timed the trip by driving over the route.

The evidence was offered by the State to account for the conduct of Junior Jones during the three or four minutes he was absent from the scene of arrest on his errand to get police assistance. Jones did not testify at trial. The testimony of Sergeant Hayes confirms Jones went to the police station and accounts for possession of the alleged marijuana during the return trip. The State sought to minimize speculation that Jones may have tampered with it by showing he was occupied with driving his car during the period of his exclusive possession.

■ Admissibility of experimental evidence rests within the sound discretion of the trial court. Althof v. Benson, 259 Iowa 1254, 1257, 147 N.W.2d 875, 877 (1967), and citations. The experiment in this case was not unusual. Cf. State v. Simpson, 119 Wash. 653, 206 P. 561 (1922).

Moreover, defendant lodged his only objection when Bartholomew was asked what speed he drove during the test. The question was objected to as "incompetent, irrelevant and immaterial" and "[a]pparently it is evidence of an experiment, and no proper foundation has been laid." The objection was overruled. The witness answered: "Drove at a speed of 25 miles per hour, and it took us approximately two minutes." There was no motion to strike.

■ The general objection of "no proper foundation" is inadequate and preserves nothing for review. State v. Wright, 191 N.W.2d 638, 642 (Iowa 1971). We will assume the general objection as to relevancy was adequate. See State v. Davis, 196 N. W.2d 885, 894 (Iowa 1972). Bartholomew's speed during his experiment was obviously relevant because it affected the time the trip took, and the issue concerning Jones' conduct while in possession of the alleged marijuana was significant in the trial.

Trial court did not err in overruling the objection.

II. *Chain of custody*. Defendant maintains that without Jones' testimony there is a fatal gap in the chain of possession of the alleged marijuana and his objection to its admissibility should have been sustained. The State contends the objection was inadequate and in any event was properly overruled.

■ Included in defendant's objection to the foundation for the exhibit was an assertion there had not been "a complete proper chain of evidence established by credible testimony." The record discloses the exhibit had purportedly been in the hands of Jones, then Holley, and then Bartholomew who later took it to state chemist Donald Booton for analysis. All testified except Jones. The State and trial court were made aware through several prior objections that the defense contended the exhibit could not be received without testimony from all persons who had custody of it. The State was aware of its problem when it offered the evidence as to Bartholomew's experiment. In these circumstances the objection was sufficient to alert trial court and the State to its ground.

■ We do not wish to be understood as approving the form of the objection. We do not approve it. A foundation objection must be sufficiently specific to alert trial court and opposing counsel to its basis. Hedges v. Conder, 166 N.W.2d 844,

856 (Iowa 1969). The greater the specificity the less likely it is that the objection will be deemed inadequate upon review. See McCormick on Evidence, § 52 at 115–117 (Second Ed.1972).

Turning then to the merits of defendant's contention, we apply the rule stated in McCormick on Evidence, § 212 at 527–528 (second Ed.1972):

"[W]hen real evidence is offered an adequate foundation for admission will require testimony first that the object offered is *the* object which was involved in the incident, and further that the condition of the object is substantially unchanged. If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. On the other hand, if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the 'chain of custody' of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with."

See State v. Limerick, 169 N.W.2d 538, 542 (Iowa 1969), and State v. Ubben, 186 N. W.2d 625, 627–628 (Iowa 1971).

■ Marijuana is susceptible to tampering or substitution. State v. Grady, 201 N.W.2d 493 (Iowa 1972); Brewer v. United States, 353 F.2d 260, 261 (8 Cir. 1965). A more elaborate foundation to establish identification is therefore required than as to readily identifiable articles. State v. Limerick, *supra*.

Determination of the sufficiency of identification is made by the trial judge. "Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the [nature] and custody of it, and the likelihood of intermeddlers tampering with it." Gallego v. United States, 276 F.2d 914, 917 (9 Cir. 1960).

■ It is not essential for admissibility that the State negative the possibility of tampering or substitution absolutely. It is sufficient to establish that it is reasonably probable tampering or substitution did not occur. West v. United States, 359 F.2d 50, 55 (8 Cir. 1966); McCormick on Evidence, *supra*. Contrary speculation affects the weight of the evidence but not its admissibility. State v. Barton, 202 Iowa 530, 532–533, 210 N.W. 551, 552 (1926); State v. Grady, *supra*.

Cases involving identification of blood specimens are analogous. See, e. g., Patterson v. State, 224 Ga. 197, 160 S.E.2d 815 (1968); State v. Coleman, 254 La. 264, 223 So.2d 402 (1969); Bean v. Riddle, 423 S.W.2d 709 (Mo.1968); Eisentrager v. State, 79 Nev. 38, 378 P.2d 526 (1963); Perry v. City of Oklahoma City, 470 P.2d 974 (Okl.1970); State v. Myers, 164 N.E.2d 585 (Ohio App.1959); Piester v. State, 161 Tex.Cr.R. 436, 277 S.W.2d 723 (1955); State v. Auger, 124 Vt. 50, 196 A.2d 562 (1963); State v. Michael, 141 W.Va. 1, 87 S.E.2d 595 (1955); annot. 21 A.L.R.2d 1216 et seq.

Trial court discretion is involved. "The trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion." Gallego v. United States, *supra*. See also West v. United States, *supra*; McCormick on Evidence, *supra*.

■ In this case there was no direct evidence of continuous custody or to negative tampering by Junior Jones during the approximately two minutes he had exclusive possession of the exhibit since he did not testify. The question becomes, as a condition precedent to admissibility, whether there was sufficient circumstantial evidence to make it reasonably probable it was the substance received from defendant.

We believe there was. Jones did not know defendant had marijuana for sale. Their acquaintanceship was slight. He thought he was setting up a sale by Polton. There is no evidence Jones was unreliable or improperly motivated. There is no basis for believing he could or would have planned and carried out a substitution of real marijuana for what defendant already represented as authentic marijuana. The sale took place at an unexpected site. The occasion for his leaving the scene of arrest arose spontaneously. Jones was alone with the exhibit for only about two minutes, during most if not all of which he must have been engaged in driving his car. It is unlikely he could have had available ten pounds of good quality marijuana to substitute. Nor does it seem reasonable that he could have hurriedly packaged it so elaborately and distinctively in the time available. Holley saw the exhibit before and after Jones' trip, and it looked the same to him.

■■ It is preferable to establish identification by direct testimony of each witness in the chain of custody. See State v. Werling, 234 Iowa 1109, 13 N.W.2d 318 (1944), where the better practice was followed. Failure to account for continuous custody or to negative any reasonable probability of tampering or substitution is fatal. See State v. Weltha, 228 Iowa 519, 292 N.W. 148 (1940). Cases relied on by defendant are in that category. However, the requisite unbroken chain of possession may in exceptional cases, such as this one, be established by circumstantial as well as direct evidence. And where, as here, that evidence renders the identification of the

exhibit reasonably probable, it is admissible.

Trial court did not err in overruling defendant's objection to the exhibit.

**III.** *Fair trial.* Defendant asserts he was deprived of a fair trial because tried by a jury selected from a panel which two weeks earlier was told he had entered a plea of guilty.

The record discloses defendant entered a plea of guilty just as his trial was to start on November 23, 1970. The jury panel was excused from the courtroom while the plea was taken. Then the panel returned. The record does not state whether defendant or his lawyer remained in the courtroom. Trial court addressed the panel as follows:

"Ladies and gentlemen of the panel: The case scheduled for trial today was a criminal case entitled State of Iowa [versus] John Frank Lunsford. In the interim period when you were out of the courtroom, Mr. Lunsford determined that he wished to enter a plea of guilty to the charge so that the case that was scheduled for trial [at] ten o'clock this morning is now not in need of the attention of the jury."

On November 30, 1970, defendant withdrew his guilty plea with permission of the court. Trial was set for December 8, 1970, before the same jury panel as had been present November 23. (No jury cases were tried in the interim.)

Defendant's counsel was asked if he had anything to say regarding the trial date. He said:

"There is one problem, and that is that Mr. Lunsford was brought before court before this entire jury panel, and the fact that the matter was scheduled for trial and later he was not tried, I think there must be supposition in the minds of most of the jurors that he did enter a guilty plea. I don't know that, but I think maybe."

Defendant is represented by different counsel in this appeal. From the quoted comment of the lawyer who represented him below we believe it is reasonable to infer he had not been in the courtroom on November 23 when the court told the jury panel of the plea of guilty.

After the lawyer's statement, trial court expressed the view defendant was not prejudiced in that the jury panel had not been in the courtroom when the plea was entered, and the panel may have learned of the plea through the newspaper anyway. Defendant's counsel inquired about a change of venue "on account of too much publicity," and the court said that would not be considered until before the court on proper application.

On the date of trial the court sustained defendant's motion *in limine* to suppress evidence as to his plea of guilty. The court also told counsel not to bring the question up on *voir dire*. The situation of a juror raising the question (presumably because of the newspaper report) was discussed. In that event the court stated the jury would be admonished to disregard it. Trial court observed:

"I think this might be a reason why this juror might go out, but I can't think of anything more damaging than a man's plea of guilty in court, and then withdraw it. But there again, isn't this something that the defendant did himself?"

Defendant did not object to the jury panel before trial. The State ascribes his failure to trial strategy. However, we can hardly attribute it to trial strategy when the record affirmatively shows he was unaware of the ground of the objection. For the same reason we cannot fault him, as

the State does, for not raising the question prior to submission of the case to the jury.

The State also urges the burden is on defendant to demonstrate prejudice, citing State v. Bigley, 202 N.W.2d 56 (Iowa 1972). *Bigley* involved the issue whether a defendant was denied a fair trial by a trial court's refusal to question jurors during trial concerning their knowledge of a newspaper report of a guilty plea. We held in such circumstances "the burden is still upon defendant to demonstrate prejudice unless the very publication of the article justifies an inference of prejudice," and there found the burden was not met and the inference was not justified. *Id.* at 57. This would answer defendant's contention if it were simply based, as trial court seemed to believe, on the fact defendant's plea of guilty was reported in a newspaper.

This case is vastly different. Here trial court told the jury panel before trial of defendant's plea of guilty. Unlike the situation with an ordinary news report, there is little doubt the panel received the message, associated it with defendant, and remembered it two weeks later. We have held admission into evidence of a withdrawn plea of guilty deprives a defendant of a fair trial. Ely v. Haugh, 172 N.W.2d 144 (Iowa 1969). The prejudicial impact would seem to be nearly as great from such a communication before trial as during trial. The unfortunate sequence of events compels an inference of prejudice.

Where, as here, the record discloses invasion of a substantial right we must reverse even though the error has not been properly preserved. § 793.18, The Code; see State v. Sonderleiter, 251 Iowa 106, 99 N.W.2d 393 (1959). Defendant did not have a fair trial.

The case is reversed and remanded for new trial.

Reversed and remanded.