STATE of Iowa, Appellee,

v.

Michael Allen RUSH, Appellant.

No. 57688.

Supreme Court of Iowa.

May 19, 1976.

**314**

Greg A. Life, of Life, Davis & Life, Oskaloosa, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., Edward N. Wehr, County Atty., and Thomas G. Schebler, Asst. County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

RAWLINGS, Justice.

Defendant, Michael Allen Rush, appeals from judgment on jury verdict finding him guilty of delivering a controlled substance (marijuana), in violation of Section 204.-401(1)(b), The Code 1973. We affirm.

Looking first to procedural aspects of the case, defendant was initially charged by county attorney's information. Immediately before trial the State, over defendant's objection, was permitted to file an amended and substituted information, thereby charging Rush had delivered the controlled substance, as originally alleged, with this added: "or did aid and abet another in delivering marijuana". By a pretrial motion in limine Rush unsuccessfully sought to exclude all evidence regarding the marijuana allegedly delivered because, after being chemically tested, it had been lost in the mails and was unavailable.

This is, in brief, the State's trial evidence, viewed most favorably to the verdict.

Pursuant to prior agreement, undercover agent Richard Johnson went to Rock Island, December 23, 1973, for the purpose of there meeting Steve Zaehringer who was to sell Johnson 100 pounds of marijuana. When Zaehringer failed to appear as scheduled Johnson returned to his residence and there met Davenport police officer Richard Parker.

Agent Johnson telephoned Zaehringer's home but was told by an unidentified female he had left with two companions. Later Zaehringer phoned Johnson and it was then agreed 50, not 100, pounds of marijuana would be delivered to the latter.

Parker and Johnson visited until Zaehringer and a companion, Chuck Cawley, arrived. Officer Parker and Cawley re-

mained in Johnson's home while agent Johnson and Zaehringer walked several blocks to where a van was located. Johnson there saw Richard Skinner in the rear of the vehicle and defendant Rush sitting in the driver's seat.

After Johnson had inspected numerous packages in a cooler and suitcase located in the van, he and Zaehringer returned to Johnson's home, followed by Rush and Skinner. Upon arrival of the van Zaehringer and Johnson carried the packaged marijuana into Johnson's home. Zaehringer and Cawley there recounted the money previously delivered to Cawley and these two then left. Immediately all four men involved in the transaction were arrested by officers who had the area under surveillance.

Other facts will be set forth as they relate to a determination of the issues presented.

Reduced to bare essentials defendant contends trial court erred in:

(1) Permitting the State to file an amended and substituted information because,

(a) it allowed an infamous charge to be made against him without presentment before a grand jury,

(b) it changed the nature of the charge, thereby forcing him to defend both as a principal and an aider and abettor;

(2) Overruling his pretrial limine motion;

(3) Overruling certain in-course-of-trial hearsay objections interposed by him;

(4) Overruling his objections to evidence regarding a chemical test of the involved substance.

These assignments will be considered in the order presented.

I. As aforesaid, Rush contends trial court erroneously permitted the State to file an amended and substituted information.

In support thereof it is first urged the revised information permitted an "infamous charge" to be made without "benefit of presentation before a grand jury". He sup-

portively argues his Fifth Amendment rights were contemporaneously violated.

■ This complaint should have been initially registered by demurrer, not by resistance to a motion for leave to file an amended and substituted information. See Code § 777.3. It may therefore be said defendant is here confronted with a waiver. See *State v. Glenn*, 234 N.W.2d 396, 399 (Iowa 1975).

■ Be that as it may there is no merit in defendant's aforesaid grand jury related claim. As articulated in *State v. Finnegan*, 237 N.W.2d 459, 460 (Iowa 1976):

"The remaining assignment of error in two divisions raises a single issue—the use of a county attorney's information. Defendant argues he is constitutionally entitled to be charged and tried on indictment. He says prosecution by information violates his right to due process under the 5th and 14th Amendments to the federal constitution.

This same complaint in various forms has been considered and rejected many times, both by this court and by others. See § 769.1, The Code; *Beck v. Washington*, 369 U.S. 541, 545, 82 S.Ct. 955, 957–958, 8 L.Ed.2d 98, 104 (1962); *Wessling v. Bennett*, 410 F.2d 205, 207 (8th Cir. 1969); *State v. Masters*, 196 N.W.2d 548, 550 (Iowa 1972); *State v. Abodeely*, 179 N.W.2d 347, 355 (Iowa 1970). Cf. *State v. Lass*, 228 N.W.2d 758, 762, 763 (Iowa 1975)."

We turn now to defendant's second complaint regarding the substituted information, i. e., in addition to defending against actual delivery of marijuana he was "prevented * * * from properly preparing for a defense as an aider and abettor", thus denying him a fair trial.

■ Admittedly, an amendment cannot be permitted which in effect charges a different offense. See *State v. Gowins*, 211 N.W.2d 302, 306 (Iowa 1973), and citations. But this rule does not instantly obtain. Rather the situation is like that presented in *State v. Guess*, 223 N.W.2d 214 (Iowa

1974). There, as here, the accused was informed against for delivery of a controlled substance. The amended information averred, alternatively, aiding and abetting an unlawful delivery. In rejecting defendant's attack upon the information thus amended this court dispositively stated, 223 N.W.2d at 215–216:

"Section 688.1, The Code, provides, *inter alia:*

" ' * * * all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, * * * must hereafter be indicted, tried, and punished as principals.'

"We find no language in chapter 204, The Code, precluding the operation of this section. Thus the crime exists and the 'aiding and abetting' language was mere surplusage. This assignment is without merit."

See also *State v. Garrett,* 173 N.W.2d 87, 90 (Iowa 1969).

█ It is parenthetically noted, Rush never requested a continuance in order to prepare his amendment-related defense. See Code § 773.47. Under these circumstances any alleged denial of defense preparation time was waived. Cf. *State v. Sevcik,* 239 N.W.2d 571 (Iowa 1976).

Further discussion will serve no useful purpose.

Defendant's first two-fold assignment is devoid of substance.

II. Rush next focuses upon his pretrial limine and trial suppression motions regarding evidence as to marijuana, lost in the mails after effectuation of a chemical analysis.

This is defendant's theory, as summarized by trial court: "[T]he very fact the State is unable to produce the marijuana should preclude any reference by anyone to the fact of the marijuana."

█ An accused should not be denied leave to examine physical evidence the State expects to use against him. See

*State v. Eads,* 166 N.W.2d 766, 771 (Iowa 1969). See also Annot., 7 A.L.R.3d 8.

Here, however, defendant does not claim the State deliberately withheld, suppressed or destroyed the involved substance. In fact the record affirmatively discloses the material was chemically analyzed by the Iowa Criminalistics Laboratory, found to be marijuana, and the remainder placed in the mail (restricted) for return to the Davenport Police Department. It then mysteriously disappeared.

*United States v. Augenblick,* 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537, 545 (1969) holds, in substance, the situation instantly presented does not rise to a constitutional level.

This is followed by *People v. Eddington,* 53 Mich.App. 200, 218 N.W.2d 831, 834 (1974), where the court said:

"Even *Augenblick, supra,* interpreting the Jencks Act, 18 U.S.C. § 3500, indicates that circumstances of evidence destruction are crucial in determining whether the sanction of exclusion attaches. *A good-faith loss does not trigger exclusion,* and does not even rise to the dignity of constitutional dimension.

"In light of the persuasive, reliable authority to the contrary, we hold the trial judge abused his discretion in concluding that good-faith unintentional nonproduction of evidence requires suppression of expert testimony because defendant's right to confrontation is violated." (emphasis supplied).

See also *United States v. Bridges,* 499 F.2d 179, 185 (7th Cir. 1974); *United States v. Love,* 482 F.2d 213, 218–220 (5th Cir. 1973); *United States v. Sewar,* 468 F.2d 236, 237–238 (9th Cir. 1972); *State v. Riley,* 24 Conn. Sup. 235, 189 A.2d 518, 521 (1962); *Davis v. State,* 135 Ga.App. 203, 217 S.E.2d 343, 345 (1975); *Watson v. State,* 18 Md.App. 184, 306 A.2d 599, 606–607 (1973); *Gedicks v. State,* 62 Wis.2d 74, 214 N.W.2d 569, 573 (1974).

█ Briefly stated, the inexplicable in-course-of-transit loss of the involved substance after it had been tested did not preclude admission in evidence of the Iowa

Criminalistics Laboratory analysis report. See *State v. Kramer,* 231 N.W.2d 874, 880–881 (Iowa 1975); *State v. One Certain Conveyance, 1971 Honda 350, etc.,* 211 N.W.2d 297, 300–301 (Iowa 1973); Code § 749A.2.

Actually, the State's inability to physically produce the missing marijuana did not affect admissibility of the test evidence. See *United States v. Pullings,* 321 F.2d 287, 296 (7th Cir. 1963); *Davis v. State, supra; Watson v. State, supra; State v. Admire,* 495 S.W.2d 132, 133 (Mo.App.1973); *Gedicks v. State,* 214 N.W.2d at 572–573.

Unpreventable loss of the marijuana did not, per se, preclude introduction in evidence of the chemical analysis of the missing substance.

III. Another interrelated facet focuses upon evidential use of the chemical test finding.

When Stephen Eck, the criminalistics laboratory analyst, was asked to state the nature of the substance tested defense counsel interposed: "One moment please. Objected to as incompetent, irrelevant and immaterial. No proper foundation laid for this witness to so testify. No showing of chain of evidence or proper chain of evidence." This objection was overruled.

■ At the outset, a question is presented as to whether defendant preserved error for appellate review. Had he here relied on the "no proper foundation" element of his objection, any error in that regard would have been waived. See *State v. Thomas,* 222 N.W.2d 488, 493 (Iowa 1974); *State v. Buchanan,* 207 N.W.2d 784, 788 (Iowa 1973); *State v. Lunsford,* 204 N.W.2d 613, 616 (1973).

Next considered is defendant's use of the phrase, "No showing of chain of evidence or proper chain of evidence."

In *Lunsford, supra,* 204 N.W.2d at 616, we observed: "Included in defendant's objection to the foundation for the exhibit was an assertion there had not been 'a complete proper *chain of evidence* established by credible testimony.'" (emphasis supplied). In holding such sufficed to preserve error this court said:

"The State and trial court were made aware through several prior objections that the defense contended the exhibit could not be received without testimony from all persons who had custody of it. The State was aware of its problem when it offered the evidence as to Bartholomew's experiment. In these circumstances the objection was sufficient to alert trial court and the State to its ground.

"We do not wish to be understood as approving the form of the objection. We do not approve it. A foundation objection must be sufficiently specific to alert trial court and opposing counsel to its basis. [Citation]." *Id.*

And *Thomas, supra,* 222 N.W.2d at 493 says:

"In *Lunsford,* we treated the objection as preserving error *only because the State and the trial court had been informed through prior objections that the defense contended the exhibits could be received in evidence only when all persons who had had custody had been called to testify.*" (emphasis supplied).

Prior objections by Rush make it apparent he thereby took the position, physical absence of the marijuana should preclude testimonial reference to the substance. It was not previously disclosed he was also lodging a "chain of custody" complaint. Actually, defendant came perilously close to a waiver of any chain of custody error, if indeed he did not do so. We do not elect, however, to resolve the instant issue on this premise.

The real thrust of defendant's contention on appeal is that the State failed to show the "final link" in chain of custody. He supportively argues unavailability of the substance is attributable to the State's negligence. But, as heretofore revealed, such contention is totally devoid of substance.

■ Our review of the record discloses the prosecution adequately supplied every essential link in the marijuana chain of custody from point of official acquisition to loss thereof in transit after having been chemically tested. This sufficed.

IV. The next issue to be resolved concerns admissibility, over defendant's repeated hearsay objections, of three answers given by agent Johnson on direct examination as a prosecution witness. Disposition of this assignment requires a colloquial quote of the record with the italicized words signifying testimony defendant maintains was erroneously admitted in evidence:

"Q. I guess we will have to go backwards a little bit. What had just occurred at your residence before you left and went up to the location on West 16th Street? A. *I had made a _ _ _ arrangements with a person known to me as Chuck Cawley and Steve Zaehringer for the purchase of _ _ _*

"MR. LIFE: Just a moment. I move to object to that, and I object to that as calling for the opinion and conclusion of this witness, and further it is hearsay on the part of this witness as far as this Defendant is concerned.

"THE COURT: It is hearsay but it isn't offered to prove a fact in issue. Overruled.

"A. Should I go on? *For the purchase of one hundred pounds of marijuana.* I was to meet Steve Zaehringer at Grannie's Bar in Rock Island, Illinois, on the afternoon of the 21st at two-thirty. I went over there. First I met with Officer Parker at my residence. I told him where I was going. Went to Grannie's. Waited until three-fifteen. Nobody showed up. I hadn't had any word so I left. Immediately came back to my residence at this time.

" * * *

"Q. Did you wait there for a while in your apartment? A. Yes. I called Steve Zaehringer's house. A girl answered the phone. Who I do not know. *Said that Steve Zaehringer _ _ _*

"MR. LIFE: Just a moment. I move to strike for the reason I did not have time to interpose an objection. For the further reason any conversation between this witness and a woman unidentified or connected with this Defendant would be hearsay.

"THE COURT: Well, the objection will precede the answer and the objection is overruled. I don't think that this is offered to prove any fact in issue.

"A. *She told me that Steve Zaehringer and Cawley had left with two other persons and she didn't know exactly where they were going. So Officer Parker and myself waited at my residence. I received a call from Steve Zaehringer saying he was unable to deliver—*

"MR. LIFE: Just a moment. I am going to make some record, Your Honor. I move to strike I received a call from Steve Zaehringer for the first reason that it is narrative in form and I do not have time to interpose an objection. For the further reason that any conversation between Steve Zaehringer and this Defendant is hearsay, Your Honor.

"THE COURT: You mean the witness, of course?

"MR. LIFE: Yes, Your Honor.

"THE COURT: Well, the same ruling will apply with respect to the hearsay, but it is narrative in form and I would ask the County Attorney to ask specific questions and receive responsive answers to give the defense counsel an opportunity to interpose an objection.

" * * *

"A. He said that he was at Grannie's Bar waiting for me. *That he couldn't deliver the hundred pounds, and he would deliver fifty pounds.* And I told him at this time that it would work better if he would come to my residence instead of me going to him, and I told him he could come up to my residence, look at the money and count it and allow me to look at the marijuana in turn and bring the two together and make the deal, and he agreed to this."

In order to facilitate discussion of defendant's presently involved triple assignment, the controverted testimony is thus paraphrased:

*FIRST RESPONSE:* "I had made arrangements with Cawley and Zaehringer

for the purchase of one hundred pounds of marijuana."

*SECOND RESPONSE:* "An unidentified girl said Zaehringer, Cawley and two other persons had left Zaehringer's house."

*THIRD RESPONSE:* "Zaehringer told me he was unable to deliver one hundred pounds of marijuana, but would bring fifty pounds to my home."

Prefatorily considered are some relevant principles of law.

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Kidd,* 239 N.W.2d 860 (Iowa 1976). See also *Tonini v. Maloney,* 228 N.W.2d 91, 93 (Iowa 1975).

The distinction between statements offered to prove the truth of a matter asserted and those offered to prove only (1) the fact such statements were made or (2) their effect on subsequent actions of the hearer, has been recognized by this court. See e. g., *State v. Hinkle,* 229 N.W.2d 744, 748–749 (Iowa 1975); *Crane v. Cedar Rapids and Iowa City Railway Co.,* 160 N.W.2d 838, 845–846 (Iowa 1968), cert. granted 393 U.S. 1047, 89 S.Ct. 692, 21 L.Ed.2d 690 (1969), aff'd 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969).

Mindful of the foregoing, the three controverted answers will now be separately considered.

A. As aforesaid, Johnson's "first response" was he "had made arrangements" with Cawley and Zaehringer for the purchase of one hundred pounds of marijuana. Defendant insists the prosecution offered this testimony to prove the truth of the matter asserted, hence it was inadmissible hearsay. We disagree.

■ At the outset Johnson's answer did not relate an out-of-court *statement.* Therefore, it was not hearsay. See e. g., *State v. Mattingly,* 220 N.W.2d 865, 869 (Iowa 1974); *State v. Brown,* 319 So.2d 409, 411–412 (La.1975).

■ And even if the response were to be deemed an out-of-court statement (such as, "Cawley and Zaehringer said they would sell me one hundred pounds of marijuana"), there is still no basis for reversal. The statement may have been "admissible as necessary to complete the story of the crime on trial, the acts being so closely related in point of time and place and so intimately associated with each other they form a part of the whole transaction", or "for the purpose of showing it was said" in explaining Johnson's actions. See *State v. Hinkle,* 229 N.W.2d at 748–749. Stated otherwise, Johnson's testimony as to his agreement or arrangement with Zaehringer and Cawley was merely descriptive of a "verbal act". See McCormick, Evidence, § 249 (2d ed. 1972). Moreover, truthfulness of the testimony was not dependent upon the veracity of Cawley and Zaehringer. Rather, it rested on Johnson's credibility. His assertion regarding "arrangements" with Cawley and Zaehringer was subject to cross-examination. Thus, value of the statement did not depend "upon the credibility of the out-of-court asserter". See *Crane v. Cedar Rapids and Iowa City Railway Co.,* 160 N.W.2d at 845.

No error attended admission in evidence of the above noted first response.

B. Next entertained is Johnson's second response: "An unidentified girl said Zaehringer, Cawley and two other persons had left Zaehringer's house."

■ We are satisfied the unidentified declarant's statement was not hearsay because it was offered only to show its effect on the hearer, agent Johnson. See *State v. Hinkle, supra;* McCormick, Evidence, § 248 at 587 and § 249 at 589–590. More specifically, the statement was not offered to prove the truth of the matter asserted but rather to show why Johnson and Parker remained at the former's residence. As such, the statement was admissible because definitionally nonhearsay.

C. Finally considered is Johnson's third response: "Zaehringer told me he was unable to deliver one hundred pounds of marijuana, but would bring fifty pounds to my

home". This extrajudicial statement falls squarely within the co-conspirator rule, recently summarized in *State v. Kidd,* 239 N.W.2d at 864:

"When there is substantial evidence of a conspiracy, whether the offense charged is conspiracy or not, everything said by any conspirator in furtherance of the common purpose is deemed to have been said in behalf of all parties to the conspiracy. *State v. Dewey,* 220 N.W.2d 629, 631 (Iowa 1974). A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is thus admissible against the party as an admission. *State v. Blyth,* 226 N.W.2d 250, 269 (Iowa 1975); see rule 801(d)(2), Federal Rules of Evidence.

"Two conditions must be met for this rule to be applicable. First, the statement must have been made during the pendency of the conspiracy. Second, it must have been in promotion of the object or design of the conspiracy. *State v. Gilmore,* 151 Iowa 618, 620, 132 N.W. 53, 54 (1911)."

See also *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2259–2261, 41 L.Ed.2d 20, 28 (1974); *United States v. Richardson,* 477 F.2d 1280, 1282–1283 (8th Cir. 1973), cert. den. 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973).

In the case now before us there is abundant independent evidence of a conspiracy, even though none was charged. Unquestionably Zaehringer's statement to Johnson was in furtherance of the conspiracy. In fact, it expressed the very essence thereof. The requisite conditions summarized in *Kidd* are met. See generally Annot., 46 A.L.R.3d 1148. Hence, Zaehringer's statement was admissible against defendant Rush as a nonhearsay admission. See *State v. Kidd,* 239 N.W.2d at 864, citing *State v. Hamilton,* 236 N.W.2d 325, 330 (Iowa 1975); Federal Rules of Evidence 801(d)(2)(E).

Johnson's third response was properly allowed in evidence. The fact trial court permitted its admission on a different theory is of no consequence. " '[T]here is

no reversible error if trial court's ruling which admitted the evidence in controversy may be sustained on any ground.' " *State v. Hamilton,* 236 N.W.2d at 333. See also *State v. Hinkle,* 229 N.W.2d at 748.

Defendant's third array of assigned errors affords no basis for a reversal.

AFFIRMED.